UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

MOSES CHOICE,

               Plaintiff,               Case No. 2:13-cv-87

v.                                               Honorable R. Allan Edgar

DANIEL HEYNS et al.,

               Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against all of the named Defendants, except Defendant Filion. The Court will serve the complaint against Defendant Filion.

**Discussion**

I. Factual allegations

Plaintiff is incarcerated in the Muskegon Correctional Facility, but the events giving rise to his complaint occurred at the Kinross Correctional Facility (KCF). In his *pro se* complaint, Plaintiff sues the following KCF employees: Warden Thomas Mackie; Nurse Practitioner Susan Wilson; Registered Nurses Penny Filion, Chris Henson, Matt Sizer and Carol Williams; Corrections Officer (Unknown) Hack; and Warden Secretary Kathy Atkinson. Plaintiff also sues Michigan Department of Corrections (MDOC) Director Daniel Heyns, MDOC Assistant Director Richard McKeon and PHS/CMS Health Care Providers.

On or about October 4, 2010, Plaintiff scraped his left knee during recreational activities. Two days later, Plaintiff was awakened by pain in his knee. On October 7, Plaintiff sent a medical kite after he noticed a bloody discharge from the wound. The following day, Defendant Filion examined and dressed the wound in sterile gauze. Defendant Filion did not believe that the wound was infected, nevertheless, she swabbed the wound for a culture. Plaintiff claims that when he returned to health services to have his bandages changed on October 9, Defendant Filion was hostile towards him and told him that he was overreacting to his injury and made threatening comments, such as, "'You're the kind that end up in ad seg by annoying us.'" (Compl. ¶ 11, docket #1, Page ID#8.) When Plaintiff asked to see another nurse, Filion responded, "'Either you see me or no one at all.'" (Compl. ¶ 13, Page ID#9.) Plaintiff was afraid of being put in segregation, so he declined the appointment.

On October 12, 2010, the culture test results for Plaintiff's wound were positive for Methicillin-resistant staphylococcus aureus (MRSA). The following day, Plaintiff was called out for a new bandage dressing and a prescription for antibiotics. Plaintiff also was placed in quarantine

from October 13 through 21, 2010. His next medical appointment was scheduled for November 6, 2010.

Plaintiff does not make any other allegations regarding what transpired between his release from quarantine on October 21 and December 9, 2010, when he was placed back in quarantine for the second time as a result of his MRSA-infected wound. On December 13, 2010, while Plaintiff was in quarantine, Defendant Hack allegedly overheard Plaintiff ask the unit porter for an extra cup that Plaintiff could use to heat up a cup of water in the microwave. Hack interrupted the conversation and shouted, "'You're not going to put a MRSA infected water bottle in the microwave!'" (Compl. ¶ 17, Page ID#10.) Also during the second quarantine, Plaintiff was prescribed an anti-bacterial nasal spray. Defendants Williams and Sizer visited Plaintiff daily to administer the nasal spray and change the dressings on Plaintiff's wound. One day, Defendant Filion came to visit Plaintiff instead of the other nurses. Plaintiff claims that Filion was hostile toward him because he had filed a grievance against her. When Plaintiff reminded Filion about the nasal spray, Filion told him that the doctor had discontinued the nasal spray prescription. Plaintiff did not argue with Filion for fear of retaliation. The next day, Plaintiff asked Defendant Williams if the doctor had discontinued the nasal spray prescription. Williams said "no" and administered the spray.

Plaintiff contends that Defendants were deliberately indifferent to his serious medical needs by failing to provide timely and adequate treatment for his MRSA infection. Plaintiff alleges that Defendants' failure to properly treat his infection has resulted in physical and psychological pain and injury. In addition, Plaintiff asserts that Defendant Hack violated department policy and committed a "medical breach of confidentiality" when he referred to Plaintiff's medical condition in front of another prisoner. Plaintiff seeks declaratory relief, as well as monetary damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Heyns, McKeon, PHS/CMS, Wilson, Mackie, Henson and Atkinson

Plaintiff fails to make specific factual allegations against Defendants Heyns, McKeon, PHS/CMS and Wilson, other than his claim that they failed to take measures to prevent their subordinates from violating Plaintiff's federal rights. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Heyns, McKeon, PHS?CMS or Wilson engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Plaintiff also fails to make any specific factual allegations whatsoever against Defendants Mackie, Henson and Atkinson. It is a basic pleading essential that a plaintiff attribute

factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Because Plaintiff fails to even mention Defendants Mackie, Henson and Atkinson in the body of his complaint, his allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Plaintiff, therefore, also fails to state a claim against Defendants Mackie, Henson and Atkinson.

B. **Defendants Sizer and Williams**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S.

102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff alleges that during his second quarantine, Defendants Williams and Sizer administered the prescribed nasal spray and changed the bandages on his wound. Plaintiff does not

allege that these nurses denied him medical care, nor does he allege any conduct supporting a claim of deliberate indifference. Plaintiff, therefore, fails to state an Eighth Amendment claim against Defendants Williams and Sizer.

C. **Defendant Hack**

Plaintiff asserts that Defendant Hack violated department policy and committed a "medical breach of confidentiality" when he referred to Plaintiff's medical condition in front of another prisoner. Specifically, Hack allegedly yelled at Plaintiff in front of a unit porter, "'You're not going to put a MRSA infected water bottle in the microwave!'" (Compl. ¶ 17, Page ID#10.)

There is a constitutional right to informational privacy under the Fourteenth Amendment, but the Sixth Circuit has limited that right "'only to interests that implicate a fundamental liberty interest.'" *Wurzelbacher v. Jones–Kelley*, 675 F.3d 580, 586 (6th Cir. 2012) (*quoting Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (internal quotation marks and citation omitted)). A plaintiff alleging a violation of his informational privacy rights must demonstrate that "'the interest at stake relates to those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty.'" *Id.* (*quoting Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998) (internal quotation marks and citation omitted)); *see also Lee v. City of Columbus*, 636 F.3d 245, 260 (6th Cir. 2011); *J.P. v. DeSanti*, 653 F.2d 1080, 1087–91 (6th Cir. 1981).

Applying the foregoing standard, the Sixth Circuit repeatedly has rejected claims asserting a constitutional right to non-disclosure of personal information. *See, e.g., Lee*, 636 F.3d at 261 (city's requirement that employees returning from sick leave disclose the "nature of [their] illness" to their immediate supervisors does not implicate a fundamental right); *Summe v. Kenton*

*Cnty. Clerk's Office*, 604 F.3d 257, 270–71 (6th Cir. 2010) (county's release of medical record of deputy county clerk pursuant to an open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Barber v. Overton*, 496 F.3d 449, 455–57 (6th Cir. 2007) (release of guards' birth dates and social security numbers to prisoners did not rise to constitutional level); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board was not a constitutional violation); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir.1 995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights); *DeSanti*, 653 F.2d at 1091 (constitutional rights not violated by dissemination of juvenile delinquents' social histories to various state agencies). Indeed, the court "has recognized a constitutionally-protected informational-privacy interest in only two circumstances: (1) where the release of personal information may lead to bodily harm, and (2) where the released information relates to matters 'of a sexual, personal, and humiliating nature.' " *Wurzelbacher*, 675 F.3d at 586 (quoting *Lambert*, 517 F.3d at 440).

Plaintiff does not allege that Hack's reference to Plaintiff's MRSA infection in front of another prisoner put Plaintiff at risk of bodily harm, or involved information of a sexual, personal, and humiliating nature. Moreover, because MRSA is spread by contact, it was reasonable for Hack to be concerned about Plaintiff's use of a microwave that also was being used by other prisoners and staff.[1] Furthermore, none of Plaintiff's allegations meaningfully distinguish his case from *Lee*, *Summe*, *Coleman*, or *Jarvis*, in which the Sixth Circuit held that the disclosure of medical information did not violate the plaintiff's constitutional right to privacy. *See Lee*, 636 F.3d at 261

---

[1]While it is unclear from Plaintiff's complaint, it seems improbable that other prisoners were unaware of Plaintiff's placement in quarantine and the medical reason for the quarantine.

("[W]e have not yet confronted circumstances involving the disclosure of medical records that, in our view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution."). Plaintiff, therefore, fails to state an informational privacy claim against Defendant Hack.

To the extent Plaintiff asserts a violation of MDOC policy, Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction over the state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

D. **Defendant Filion**

The Court finds that Plaintiff's allegations are sufficient to warrant service of the complaint against Defendant Filion.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Heyns, McKeon, PHS/CMS, Mackie, Wilson, Hack, Henson, Sizer, Williams and Atkinson will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Filion.

An Order consistent with this Opinion will be entered.


Dated:     4/18/2013             /s/ R. Allan Edgar
                                 R. Allan Edgar
                                 United States District Judge